IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                     Case No. 19-10165-01-JWB

TONEY D. WILLIAMS,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for release from custody prior to sentencing. (Doc. 19.) The motion is fully briefed. (Doc. 20.) For the reasons stated herein, the motion (Doc. 19) is DENIED.

**I. Background**

Defendant was charged by way of complaint on October 23, 2019, with two violations of 18 U.S.C. §§ 1951 and 2, robbery, and two violations of 18 U.S.C. § 924(c), carrying, using, and brandishing a firearm during and in relation to a crime of violence. (Doc. 1.) The charges in the complaint were that Defendant, while armed with a handgun, robbed two Family Dollar stores in early October 2019. Defendant waived his right to a detention hearing and was detained pending trial. (Doc. 3.) On November 12, 2019, an information was filed charging Defendant with one count of robbery in violation of 18 U.S.C. §§ 1951 and 2 for the robbery of the Family Dollar on October 1, 2019. (Doc. 7.) On January 13, 2020, Defendant entered a plea of guilty to the robbery count in the information. The factual basis for the guilty plea states that Defendant entered the store and demanded money from employees "by threatening force, violence and fear of injury

through the display of a handgun." (Doc. 16 at 2.) After entering his plea, Defendant was remanded to the custody of the United States Marshal. Defendant did not seek release pending sentencing. Sentencing is currently set for June 15, 2020. (Doc. 18.)

Defendant now moves for release pending sentencing arguing that there are exceptional reasons why detention is not appropriate.

**II. Standards**

Under the Bail Reform Act of 1984, the court must order a defendant's presentence confinement when he has entered a plea of guilty to certain offenses, including crimes of violence. 18 U.S.C. § 3143(a)(2). A court may release a defendant prior to sentencing only if he meets the conditions for release in § 3143(a)(2) and makes a "a clear showing of exceptional reasons why his detention would not be appropriate." *United States v. Dahda*, 772 F. App'x 730, 732–33 (10th Cir. 2019) (citations omitted). "The statutory reference to exceptional reasons has real substance; circumstances that do not extend beyond the ordinary provide no basis for release under § 3145(c)." *United States v. Velarde*, 555 F. App'x 840, 841 (10th Cir. 2014). The reasons must be "out of the ordinary, uncommon, or rare." *Id.* Under this standard, the burden remains with Defendant.

**III. Analysis**

**A. Flight Risk and Danger to Community**

Defendant must first show by "clear and convincing evidence, that he [is] not likely to flee or pose a danger to the safety of any other person or the community if released." *Dahda*, 772 F. App'x at 733. In support of the argument that Defendant will not flee or pose a danger to the community, Defendant merely asserts that home confinement and electronic monitoring will suffice. (Doc. 19 at 15.) Defendant states that the risk to community safety is low under these

2

conditions. Defendant makes no attempt to discuss his criminal history or the charges in this matter.

The charged offenses are quite serious in nature. They include a crime of violence and the use of a firearm in the course of robbing a store. The complaint charges that Defendant robbed two different stores on October 1 and 3, 2019. During those robberies, Defendant used a handgun to facilitate the robberies. Defendant has pled guilty to the charged robbery on October 1. Although he did not plead guilty to the firearm count, the factual basis of his plea admits that he used a firearm during the robbery. These are very serious charges and they indicate that Defendant poses a significant danger to the community. Within a span of just a couple days, Defendant was charged with committing two robberies and threatening the store clerks with a firearm.

Significantly, Defendant's criminal history also includes two convictions of criminal possession of a firearm. Those occurred in 2016 and 2017. This criminal history, in addition to Defendant's current criminal charges, shows that even though Defendant cannot legally possess a firearm he continues to do so and has used a firearm to commit additional crimes. The probation office has also notified the court that the preliminary calculation of Defendant's criminal history category is a category IV.

Although Defendant's proposed plan of home detention and electronic monitoring may lend some support to a finding that Defendant is unlikely to flee, Defendant has failed to establish by clear and convincing evidence that he is not a danger to the community. *See United States v. Dahda*, 772 F. App'x 730, 732–33 (10th Cir. 2019) (conclusory assertion that a defendant is not a danger is not sufficient). The evidence relating to Defendant's alleged unlawful possession of a firearm shortly before this case, his alleged use of a firearm during the alleged robberies, and the

past convictions of felon in possession of firearm, all indicate his release would pose a considerable risk of dangers to others.

   **B. Exceptional Reasons**

The court further finds that Defendant has not established exceptional reasons that warrant his release. Defendant contends that he has had a history of injuries to his lungs and immune system that makes COVID-19 deadly for him. Essentially, Defendant argues that due to the current pandemic of COVID-19 and his health condition it is imperative that he practice social distancing, but that he cannot do so while confined. The court assumes, without deciding, that the COVID-19 pandemic and a defendant's current health condition could satisfy the statutory requirement of exceptional reasons. The court recognizes that the current COVID-19 pandemic is a health crisis and there is not yet a treatment or vaccine for COVID-19. Moreover, the state of Kansas has imposed a stay-at-home order for non-essential activities. Individuals have been instructed to maintain a six-foot distance from other individuals, to not gather in groups of more than 10, and to exercise good hygiene by continual hand washing.[1] This pandemic is not an ordinary illness and, as such, exceptional reasons might be shown by a defendant who is at a risk of significant illness or potential death in the event he contracts COVID-19. The Centers for Disease Control and Prevention have identified individuals with diabetes, lung disease, and heart disease at higher risk of severe illness. (Doc. 19 at 8-9.)

In support of his motion, Defendant has attached medical records in support of the contention that he has an underlying health condition. Defendant argues that his health history, which includes hospitalizations for gunshot wounds, shows that he has been critically ill and had

---

[1] The court has not attempted to identify all recommendations by the state of Kansas or all the limitations in the stay-at-home order.

4

respiratory failure. A review of the records, however, does not support a finding that Defendant's immune system and lungs have been compromised.

In January 2014, Defendant was hospitalized at Stormont Vail with gunshot wounds to his abdomen and buttocks. Defendant had four surgeries during his hospital stay. Defendant was also diagnosed with pneumonia during his hospital stay. Defendant was intubated during procedures while hospitalized. However, there is no indication in the record that this intubation was due to a lung injury or his pneumonia. (Doc. 19, Exh. A at 1-3.) Defendant returned to the hospital on February 20, 2014, due to leg pain and difficulty walking.

Defendant next asserts that his "suppressed immune system caused him to be presented to the emergency department at Stormont Vail on three separate occasions." (Doc. 19 at 5.) A review of the records, however, does not support a finding that Defendant has a suppressed immune system or a lung injury. Defendant was not diagnosed with a lung injury or pneumonia during any of these visits. On September 22, 2015, Defendant complained of fever and cough. (Doc. 19, Exh. A at 9.) The records attached, however, show that he was discharged to his home. Defendant did not show any chest pain nor shortness of breath. (*Id.*) On January 25, 2016, Defendant presented to the emergency room because of a cough. He was discharged home and told to take over-the-counter cough medicine. Notably, the healthcare provider observed that Defendant's breathing efforts and breathing sounds were normal; that he was under no respiratory distress; that he had no decreased breath sounds; no wheezes; no rales; that his oxygen level was 99 percent; and, that his lung sounds were clear. (*Id.* at 11.) On July 25, 2016, Defendant again presented to the emergency room for body aches, sore throat, and fever. He was discharged after receiving fluids and told to take Tylenol for pain and to drink fluids. While in the emergency room, his oxygen levels were recorded at 95 and 98 percent. The records also state that his breath sounds were normal and there

5

was no indication of respiratory distress. (*Id.* at 13.) On September 8, 2016, Defendant presented to the emergency room for nausea. The records show that his oxygen levels were 97 and 99 percent and his breathing was normal. Notably, the record also states that Defendant was negative for an immunocompromised state. (*Id.* at 16.)

A couple of days later, on September 10, Defendant had his gallbladder removed. (*Id.* at 18.) On February 18, 2017, Defendant was again admitted to the hospital in critical condition due to multiple gunshot wounds. Defendant was intubated for airway control and transport to the University of Kansas Medical Center. (*Id.* at 31.) On February 19, Defendant's oxygen levels were 99 to 100 percent. (*Id.* at 20.) On February 20, his oxygen level was 97 percent. (*Id.* at 32.)

Defendant argues that these records show that he has suffered respiratory damage. (Doc. 19 at 7.) The records do not support this conclusion. Rather, the records indicate that Defendant was intubated due to his gunshot wounds and the surgeries related to those injuries. Moreover, as of September 2016, the record states that Defendant does not have a history of being immunocompromised. As discussed, the records also show that Defendant's oxygen levels were normal during his hospitalizations and emergency room visits. While the court agrees that Defendant has had extensive hospitalizations for his young age, the records do not show that he has any lasting lung injury or that he is immunocompromised. Rather, he has undergone surgeries for his gunshot wounds and gallbladder and he has visited the emergency room due to typical virus and/or cold symptoms. As such, Defendant has not made a showing that there are exceptional reasons for his release, nor could he based on the medical records that he has provided.

## IV. Conclusion

Defendant's motion (Doc. 19) for release pending sentencing is DENIED. Defendant's request for a hearing is denied. Based on the records provided, Defendant's criminal history, and the record in this case, the court finds that a hearing is not necessary.

IT IS SO ORDERED this 6th day of April, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE